IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORI HARTLE,                                    *

    *Plaintiff*,                                 *

    v.                                          *        Civil Action No. RDB-24-3215

TRANSPLANT GENOMICS, INC.,                      *
a wholly owned subsidiary of EUROFINS
Viracor, LLC,                                   *

    *Defendant*.                                *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Lori Hartle sues her former employer, Defendant Transplant Genomics, Inc.

("Transplant" or "Defendant"), under the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. §§ 621 *et seq.* Transplant is a Massachusetts medical technology company

which develops diagnostic testing to assist in organ transplants.[1] Hartle alleges that, during her

time at Transplant and because she was sixty-three years old at the time of her hiring, she

suffered unlawful discrimination (Count I), retaliation (Count II), and a hostile work

environment (Count III). (ECF No. 1) Presently pending is Transplant's Motion to Dismiss

(ECF No. 12) pursuant to Federal Rule of Civil Procedure 12(b)(6). Hartle responded (ECF

No. 13) and Transplant replied (ECF No. 14). The Court has reviewed the parties'

submissions. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons,

---

[1] The Court takes judicial notice of this fact from Transplant's publicly available website.

Transplant's Motion to Dismiss is GRANTED as to Count II, which is DISMISSED. The Motion is DENIED as to Counts I and III.

## BACKGROUND

When ruling on a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court takes the facts below from the Complaint (ECF No. 1) and accepts them as true solely for the purpose of ruling on this Motion. (ECF No. 12)

Transplant hired Hartle in June 2020 as a Transplant Care Manager. (ECF No. 1 ¶ 8) She was sixty-three at the time. (*Id.*) She alleges that she was the oldest new hire in her department. (*Id.*) Throughout her employment at Transplant, her direct supervisor was Alex Vatz, whom Hartle contends treated her differently than her younger coworkers from the start of her employment. (*Id.* ¶¶ 9–10) Specifically, she claims that while Vatz had unlimited time to train and field questions from younger female employees under his supervision, he did not extend to her the same treatment. (*Id.*) Further, she alleges that during at least the first seven months of her time at Transplant, Vatz never called her or worked with her within her employment territory. (*Id.* ¶ 11) Consequently, to get the information which Hartle claims Vatz refused to provide, she was made to develop business relationships with other Transplant supervisors, as well as Transplant's president and vice president. (*Id.* ¶ 12)

As early as January 2021, Hartle made multiple complaints to Transplant Human Resources and Employee Relations regarding Vatz's behavior. (*Id.* ¶ 12) In January 2022,

Hartle received a promotion to a position in the Sales department and was eligible for a pay raise. (*Id.* ¶ 13) However, Vatz did not recommend her for that raise, stating instead that Hartle was "already making too much money." (*Id.*) Yet despite this, Vatz offered coworkers younger than Hartle pay raises, training opportunities, and meetings with clients that might have resulted in more business for those coworkers. (*Id.* ¶ 14) Additionally, while Vatz acknowledged publicly the contributions of other employees hired after Hartle, he did not similarly acknowledge her. (*Id.* ¶ 16) Hartle did not receive raises or bonuses, even though one younger coworker received a $10,000 raise and $5,000 bonus. (*Id.* ¶ 15) Likewise, while she was denied opportunities to attend Transplant meetings and conferences, her younger colleagues were offered these chances. (*Id.* ¶ 17) During the relevant period, Hartle was one of the top three producers in her division. (*Id.* ¶ 15)

In February 2023, Vatz accused Hartle of seeking reimbursement for erroneous and false expenses. (*Id.* ¶ 18) Vatz had approved similar expenses from Hartle in the past without objection. (*Id.*) On March 27, 2023, Hartle filed charges of age discrimination and retaliation with the EEOC. (*Id.* ¶ 4)

At some point around this time,[2] Transplant management asked Hartle to attend a meeting, stating that they would be discussing an expense report. (*Id.* ¶ 19) At the meeting,

---

[2] This paragraph of the Complaint (ECF No. 1), number 19, is undated. Nevertheless, at the motion to dismiss stage the Court accepts all well-pleaded facts as true and draws reasonable inferences from them in the light most favorable to the plaintiff. *Wikimedia Found.*, 857 F.3d at 208. Given this standard, and the facts which are pleaded in paragraph 19—specifically (1) that Transplant management told Hartle that her discrimination claims were baseless, (2) that this occurred outside of the "EEO [sic]" process, and (3) that Hartle's attorney was not present—the Court infers that this meeting took place after Hartle filed her initial charges with the EEOC on March 27, 2023.

Transplant management told Hartle that her discrimination claims were baseless because Vatz

had denied acting in a discriminatory way. (*Id.*) This meeting took place outside of the EEOC

process; Hartle did not have her lawyer with her. (*Id.*) Additionally, Transplant never took

corrective action for nor conducted an investigation of Hartle's internal claims of

discrimination by Vatz. (*Id.* ¶ 20) On or about May 1, 2023, Hartle learned that Transplant was

closing her division. (*Id.* ¶ 21) This meant that Hartle, among the rest of the employees in her

division, lost her job. (*Id.*)

On or about June 6, 2023, Hartle filed an amended charge of a hostile work

environment with the EEOC. (*Id.* ¶ 5) More than a year later,[3] on November 6, 2024, Hartle

filed in this Court a three-count Complaint (ECF No. 1), alleging violations of the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* Specifically, she claims

age discrimination (Count I), retaliation (Count II), and a hostile work environment (Count

III).

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil

Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief

can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not,

---

[3] Under the ADEA, a plaintiff must first file a charge against her employer with the EEOC or a state corollary before she may file a federal lawsuit. 29 U.S.C. § 626(d)(1); *see Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Unlike in Title VII claims, where a plaintiff must first be entitled to a right-to-sue letter from the EEOC, *see* 42 U.S.C. § 2000e-5(f)(1) (laying out the right-to-sue entitlement for Title VII cases), the ADEA only requires that a plaintiff file an administrative charge with the EEOC and then wait sixty days before filing a federal lawsuit. *See Walton*, 33 F.4th at 172, 175.

however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). It must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678. In other words, the factual allegations in the complaint, taken as true, must "permit the court to infer more than the mere possibility of misconduct" by the defendant. *Id.* at 679.

## ANALYSIS

Transplant moves to dismiss all three counts of Hartle's Complaint. It raises three independent arguments for dismissal. First, Transplant claims that Hartle failed to exhaust her administrative remedies under the Age Discrimination in Employment Act of 1967. Second, Transplant argues that Hartle's case is time-barred. Third, Transplant asserts that each count of the Complaint fails to state a plausible claim upon which relief may be granted. In its Reply (ECF No. 14), Transplant withdrew its first argument. The Court notes this withdrawal and

therefore rules only on the two remaining arguments—timeliness and failure to state a claim, taking each in turn.

### I.    Statute of Limitations

Transplant argues that the Court should dismiss the Complaint in its entirety because it is time-barred by the ADEA's statute of limitations. (ECF No. 12 at 5) Transplant is correct that certain of Hartle's factual allegations are barred as untimely because they constitute discrete discriminatory acts outside of the ADEA's statutory window. This argument, however, does not amount to an independent ground for dismissal of any of the three counts alleged in the Complaint. (ECF No. 1) Instead, the ADEA's statute of limitations requires the Court to delineate those factual allegations that are within the statutory window from those that are not.

The ADEA requires a party to file a charge of age discrimination against her employer with the EEOC within 180 days of the occurrence of the alleged discriminatory behavior. 29 U.S.C. § 626(d)(1)(A). In deferral states, like Maryland, that statutory period extends to 300 days.[4] *Id.* § 626(d)(1)(B). A party who complies with that period, and then exhausts her administrative remedies (*i.e.*, filing a charge with the EEOC and then waiting sixty days, *see id.* § 626(d)), may bring her age discrimination case in federal court. Like the statutes of limitations

---

[4] A deferral state is one with a law that prohibits age discrimination in employment, and which establishes or authorizes a state authority (*e.g.*, a state corollary of the EEOC) to enforce that state law. 29 U.S.C. § 633(b). The purpose of this deferral arrangement, for the states which qualify, is "comity—to provide states and localities the first opportunity to combat discrimination, free from premature federal intervention." *Puryear v. Cty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). Maryland's Title 20, *see* Md. Code Ann., State Gov't §§ 20-601 *et seq.* (West 2025), prohibits age discrimination in employment. It also charges the Maryland Commission on Civil Rights with its enforcement.

for various other federal laws, the ADEA's is a firm bar on recovery. Important for this case, however, the statute applies differently to claims predicated on "discrete acts of discrimination" than it does for claims of a hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 535 U.S. 101, 105 (2002).[5]

A "discrete act" is one instance of discrimination, a "single 'occurrence'" that most often can be said to occur on a particular day. *Id.* at 111 (quoting *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 234 (1976)). These are acts like "termination, failure to promote, denial of transfer, [and] refusal to hire." *Id.* at 114. Claims of hostile work environment, however, stand "in direct contrast to discrete acts." *Id.* at 115. "Their very nature involves repeated conduct," and, based on that nature, these claims can never be said to occur "in any particular day." *Id.* This type of "unlawful employment practice" barred by the ADEA "occurs over a series of days or perhaps years" and may include "single act[s] of harassment" that are not actionable on their own. *Id.*

Therefore, *Morgan* instructs that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Prior, untimely acts, though not actionable, may be used as "background evidence in support of a timely claim." *Id.* Hostile work environment claims, however, are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117 (cleaned up). As

---

[5] *Morgan* involved a Title VII race discrimination claim. The United States Court of Appeals for the Fourth Circuit has ruled that *Morgan*'s holdings as to the statute of limitations apply equally to ADEA claims. *Jones v. Calvert Grp., Ltd.*, 531 F.3d 297, 300 (4th Cir. 2007), *overruled on other grounds by*, *Fort Bend Cty., Tex. v. Davis*, 587 U.S. 541 (2019). Therefore, *Morgan* applies here.

such, so long as all the acts which constitute the hostile work environment claim are part of the "same unlawful employment practice and at least one act falls within the [statutory] time period," the claim is not time-barred under the ADEA. *Id.* at 122.

In this case, Hartle brought her initial charge of discrimination and retaliation with the EEOC on March 27, 2023. The parties agree that 300 days prior to that date is May 31, 2022. As such, all discrete discriminatory acts that took place before this date are unactionable. As relevant here, they may not form part of a claim of discrimination or retaliation under the ADEA, nor may they form part of a hostile work environment claim, except as background material. *Id.* Importantly, Hartle alleges in her Response (ECF No. 13) that none of her claims is time-barred because of the *continuing violation doctrine.* (*Id.* at 6) She cites *Taylor v. Home Ins. Co.*, 777 F.2d 849 (4th Cir. 1985), as support. (*Id.*) *Taylor* does not apply in this case as it was, at the very least, abrogated by *Morgan*. Further, to the extent that *Morgan* upheld the continuing violation doctrine, it specifically cabined its use to hostile work environment claims. *Morgan*, 536 U.S. at 122. Therefore, Hartle may only rely on this doctrine here as it pertains to Count III, in which she alleges a hostile work environment. As discussed above, *Morgan* squarely prohibits the use of the continuing violation doctrine for discrete discriminatory acts, pleaded in this case in the form of Count I—alleging age discrimination; and Count II—alleging retaliation.

Transplant argues that anything alleged in the Complaint that occurred prior to May 31, 2022 is time-barred. (ECF No. 12 at 5) However, only those discrete discriminatory acts which occurred prior to May 31, 2022 are time-barred. Other factual allegations in the Complaint that occurred before the statutory cut-off date may still be lodged as part of a

hostile work environment claim. These allegations include: (1) Vatz not calling or working with Hartle during the first seven months of her employment with Transplant (ECF No. 1 ¶ 11); and (2) the multiple complaints about Vatz made to Transplant's Human Resources beginning in January 2021. (*Id.* ¶ 20) According to the Complaint (ECF No. 1), the only discrete discriminatory act which occurred before May 31, 2022 was the decision not to give Hartle a raise after her promotion to a position in the Sales department in January 2022. (*Id.* ¶ 13) This is clearly a discrete discriminatory act as, under *Morgan*, it can be said to have happened on a particular day. Thus, this allegation is time-barred, and the Court will not consider it in addressing the pending Motion to Dismiss. (ECF No. 12)

Transplant next argues that the "most of the remaining allegations" in the Complaint "fail to state *when* they occurred," and that the Court must therefore assume that these allegations are untimely. (ECF No. 12 at 6 (emphasis in originial)) At this stage of litigation, the standard of review requires this Court to assume that Hartle's pleas are true and to draw all reasonable inferences in her favor. *Wikimedia Found.*, 857 F.3d at 208. These allegations include: (1) that Vatz treated her differently than her younger coworkers from the beginning of her employment, including having unlimited time to train them and field their questions while having none for Hartle (ECF No. 1 ¶ 10); (2) that Hartle was forced to develop business relationships with other supervisors at Transplant, as well as the vice president and president of the company (*Id.* ¶ 12); (3) that Vatz gave raises, training opportunities, and client meetings to younger coworkers which he did not give to Hartle (*Id.* ¶ 14); (4) that Vatz failed to recognize Hartle's contributions to Transplant in front of team members, despite acknowledging younger coworkers hired after Hartle in this way (*Id.* ¶ 16); (5) that Hartle was

denied opportunities to attend Transplant meetings and conferences while her younger colleagues were offered these opportunities (*Id.* ¶ 17). (ECF No. 12 at 7) Accordingly, the only allegation in the Complaint (ECF No. 1) which is time-barred is the January 2022 promotion and the corresponding decision not to give Hartle a pay raise.

## II.    Failure To State Plausible Claims Upon Which Relief May Be Granted

Transplant's other argument for dismissing the Complaint is that Hartle failed to state plausible claims upon which relief may be granted. (ECF No. 12 at 7, 10, 13) Because Hartle brings a three-count Complaint, the Court evaluates this argument as to each count.

### A.  Count I – Age Discrimination in Violation of the ADEA

Transplant asserts that Hartle fails to sufficiently allege a claim of age discrimination under the ADEA. (*Id.* at 8) Specifically, Transplant argues that Hartle did not adequately plead an adverse employment action or causation. (*Id.*) As explained here, Hartle sufficiently states a claim upon which relief can be granted as to this count of age discrimination.

The ADEA prohibits an employer from discharging a person or "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). To make out a prima facie case of discrimination under the ADEA, a plaintiff must assert that she (1) is a member of a protected class—that is, at least forty years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) was replaced by or treated less favorably than someone who is either outside the protected class. *Palmer v. Liberty Univ.,*

*Inc.*, 72 F.4th 52, 63 (4th Cir. 2022). Additionally, a plaintiff must plead sufficient facts to show

that age was "but-for cause of the employer's adverse action." *Gross*, 557 U.S. at 177.

Here, Hartle's Complaint (ECF No 1) adequately pleads the first, third, and fourth

elements. She was sixty-three years old when hired, putting her in the protected class of the

ADEA. (ECF No. 1 ¶ 22) Additionally, solely by being a top three producer in her division,

she alleges that she was meeting Transplant's legitimate expectations for someone in her

position. (*Id.* ¶ 23) With respect to the fourth element, that Hartle was treated less favorably

than her younger colleagues, there are numerous paragraphs in the Complaint which attest to

this, and which are sufficient to state a plausible claim. (*See, e.g., id.* ¶¶ 10, 14, 15, 16, 17)

As to the second element, an adverse employment action is a discriminatory act that

"constitutes a significant change employment status, such as hiring, firing, failing to promote,

reassignment with significantly different change in benefits." *Hoyle v. Freightliner, LLC*, 650

F.3d 321, 337 (4th Cir. 2011). The inability to attend a conference may amount to an adverse

employment action if it materially affects the terms, conditions, and benefits of employment.

*Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 531 (D. Md. 2004).

Hartle claims that she suffered adverse employment actions in that she was: (1) denied

a pay raise in January 2022; (2) denied bonuses and additional pay raises given to younger

employees; (3) denied opportunities to attend Transplant meetings and conferences that were

offered to younger employees; (4) denied reimbursement for legitimate business expenses

which had been previously approved without objection; and (5) excluded from conversations

affecting her team, such as the hiring of new team members. (ECF No. 1 ¶ 24)

As discussed above, the initial claim relating to the raise in January 2022 is time-barred. Having said that, later being denied bonuses is certainly enough to meet the pleading standard for an adverse employment action based on *Hoyle*, as it is an instance of a significant change in benefits. Additionally, being denied reimbursements, assuming that Hartle was indeed entitled to them, counts as an adverse employment action for the same reason. Hartle's allegation that she was denied opportunities to attend meetings and conferences *could* amount to adverse employment action, but without more information the Court cannot say. Finally, being excluded from conversations affecting her team is, for the same reason as the conferences, insufficient to meet the pleading standard as there is no indication that Hartle's employment position materially changed. Regardless, the denial of bonuses and additional pay raises offered to younger employees and the denial of reimbursements previously unquestioned are sufficient to overcome the pleading standard.

Finally, with respect to causation, as Judge Messitte of this Court stated, a plaintiff must allege "some connective thread between the alleged mistreatment and the protected status." *Gough v. Rock Creek Sports Club*, No. PJM-19-3533, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021). At the motion to dismiss stage, however, the connective thread may be reasonably inferred from the facts alleged in the complaint. As such, given that the Complaint (ECF No. 1) makes numerous references to disparate treatment on the basis of age, Hartle has sufficiently pleaded her claim of age discrimination under the ADEA. Transplant's Motion to Dismiss (ECF No. 12) this count is DENIED.

**B. Count II – Retaliation in Violation of the ADEA**

Transplant next asserts that Hartle failed to state a plausible claim of ADEA retaliation upon which relief can be granted. (ECF No. 12 at 10) Specifically, Transplant argues that Hartle cannot show that she engaged in protected activity and that she failed to allege an adverse action. (*Id.*) For the following reasons, Hartle fails to sufficiently allege a count of retaliation in violation of the ADEA.

To establish a prima facie case of retaliation, a plaintiff must assert that (1) she engaged in protected employment activity; (2) her employer took an adverse action against her; and (3) a causal nexus exists between the protected activity and the adverse action. *Massaro v. Fairfax Cty.*, 95 F.4th 895, 902 (4th Cir. 2024) (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

Hartle sufficiently pleads the first element in paragraph 30 of her Complaint (ECF No. 1), which details that she complained about age discrimination by Vatz to Transplant's Human Resources in November 2022. (*Id.* ¶ 19) Nevertheless, Hartle fails to allege any facts which show that Transplant took an adverse action against her after her November 2022 complaint to Human Resources. Absent that, there is nothing in the complaint to show the retaliatory nature of an adverse action inherent to this type of lawsuit. Much to the same effect, Hartle alleges no facts in the Complaint (ECF No. 1) which show causation. Specifically, Hartle fails to plea any facts or circumstances tying her treatment in the months after her November 2022 complaint to Human Resources to the fact that she had made a complaint.

Further, to the extent that the Court assumes for the purposes of ruling on this Motion (ECF No. 12) that the factual allegations in paragraph 19 of the Complaint (ECF No. 1 ¶ 19) occurred after Hartle filed her charge with the EEOC on March 27, 2023, nothing in the

Complaint further leads to an inference of causation. Therefore, Transplant's Motion to Dismiss (ECF No. 12) this count is GRANTED, and Count II of the Complaint (ECF No. 1) is DISMISSED.

### C. Count III – Hostile Work Environment in Violation of the ADEA

Transplant's final argument in its Rule 12(b)(6) Motion to Dismiss (ECF No. 12) is that Hartle failed to sufficiently allege a claim of a hostile work environment under the ADEA. Specifically, Transplant argues that Hartle fails to show that the alleged discriminatory conduct was sufficiently severe or pervasive enough to alter the conditions of her employment. As the Court explains below, Hartle adequately states a claim upon which relief can be granted as to this count of a hostile work environment.

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Decoster v. Becerra*, 119 F.4th 332, 337 (4th Cir. 2024). To state a plausible claim for relief under the ADEA, a plaintiff must show (1) that she was subject to unwelcome conduct; (2) that the unwelcome conduct was based on age; (3) that such conduct was sufficiently pervasive or severe to alter the conditions of employment and create a hostile work environment; and (4) some basis exists for imputing liability to the employer. *Buchhagen v. ICF Int'l, Inc.*, 545 Fed. App'x 217, 219 (4th Cir. 2013). An employer can be found liable for a hostile work environment which has been "created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Here, the Complaint sufficiently alleges the first, second, and fourth elements. (ECF No. 1) By being treated differently than her employers from the start of her employment with Transplant (*Id.* ¶ 10), being denied training by her direct supervisor (*Id.* ¶ 11), and otherwise not receiving the same benefits of being a Transplant employee as her younger colleagues. (*Id.* ¶¶ 10, 12, 14, 15, 16, 17) Similarly, and as already mentioned, the Complaint sufficiently alleges that this differential treatment was due, at least in part, to Hartle's age.

As to the third element, to determine whether alleged actions are sufficiently severe or pervasive, a court will conduct both a subjective and objective assessment of the claimed harassment. *See Couch v. City of Va. Beach*, 768 F. Supp. 3d 741, 751 (E.D. Va. 2025) (citing *Jones v. HCA*, 16 F. Supp. 3d 622, 630 (E.D. Va. 2014)). As the Fourth Circuit has explained, the work environment "must be perceived by the victim as hostile or abusive, and that perception must be reasonable." *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). At this stage of the case, construing all facts pleaded in the Complaint (ECF No. 1) as true, Hartle has sufficiently alleged a subjective perception of a hostile or abusive work environment.

To determine whether the conduct was objectively severe or pervasive, the Court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "This objective inquiry 'is not, and by its nature cannot be, a mathematically precise test.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris*, 510 U.S. at 22). The ADEA "does not establish a general civility code for the American workplace," and "[s]ome rolling with the punches is a fact of workplace life." *Id.* at

15

315. To that end, isolated incidents of hostility or abusive language are typically not enough to support a claim of a hostile work environment. *Faragher*, 524 U.S. at 788. Likewise, "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisors, are not actionable" under the ADEA. *Sunbelt Rentals*, 521 F.3d at 315–16.

Transplant cites *Henderson v. Tower Fed. Credit Union*, No. 23-cv-01314-JRR, 2024 WL 1722555, at *9 (D. Md. Apr. 22, 2024), to argue that "ordinary inappropriate behavior, such as pounding one's hands on the desk during meetings, making snide comments, repeatedly criticizing an employee's mistakes, playing favorites," among other examples, "do not constitute a hostile work environment." (ECF No. 12 at 14). Be that as it may, the Complaint (ECF No. 1) alleges facts which create a picture of something above so-called "ordinary inappropriate behavior." She alleges that Vatz treated her differently than younger employees consistently throughout her employment with Transplant, and that he offered to them myriad opportunities which he did not offer to her. These facts sufficiently allege an objectively severe or pervasive harassment to survive a motion to dismiss. Accordingly, Transplant's Motion to Dismiss (ECF No. 12) this count is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion is GRANTED as to Count II, alleging retaliation, which is DISMISSED. Defendant's Motion is DENIED as to Counts I and III, which remain pending.

A separate Order follows.

Date: September 18, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge

17